Jones, J.,
dissenting.
A rule having been issued from this Court, directed to the Circuit Court of the county of St. Louis, commanding the Judge thereof to show cause why a writ of mandamus should not issue, requiring him to issue execution on the judgment, in the above action, the Judge returned a copy of the proceedings therein, and certified, that for reasons appearing on the face of the record, the Circuit Court had refused to award execution in the case. It appears from the record, that on the 11th March, 1819, the plaintiffs filed a declaration in the Clerk’s office of the said Circuit Court, against the defendants in debt, on several notes of hand; whereupon, the defendants appeared in their proper persons before the Clerk, (or rather his deputy,) and confessed a judgment for debt, damages and costs. The entry of the judgment is as follows: “ Therefore, it is considered that the said plaintiffs (naming them) recover against the said defendants, (also naming them,) their debt and damagés aforesaid, in form aforesaid assessed, together with their costs and charges by them, about their suit in this behalf expended, &c.” This entry is signed, A. Gamble, Clerk, by'H. R. Gamble, Deputy Clerk. That an execution issued thereon, returnable to April term, 1820, which was quashed by the Circuit Court, at the return term thereof j whereupon, the plaintiffs applied, by motion to the CoutI, to enter up the said judgment as of October term, 1818, 'Which was denied. Three several other motions were made by the plaintiffs, to enter up said judgment, as of different terms, which do not appear to have been either argued or decided on.
The material question to be decided, is, “ whether the acknowledgment of the defendants, taken before the deputy of the Circuit Court Clerk, in vacation, on which he signed judgment, also in vacation, is of any and what validity, either by the common law, or by any statute in force in the late Territory of Missouri ? ” The plaintiffs counsel have endeavored to assimilate this judgment to judgments entered up by warrants of attorney in England, which, as they contend, are of a common law origin. In support of their position, they have quoted several authorities and passages, from the books of practice of the English Courts of King’s Bench and Common Pleas. But they have not produced, nor indeed, in my opinion, can any authorities be produced, to show that judgment confessed in vacation, by warrants of attorney, are warranted by the common law. They originated in fiction, are mere creatures of the Courts, regulated and varied, from time to time, by their own rules, which have never been resorted to, or adopted in any of the Courts of the Territory. Were, however, both their positions admitted to be correct, and that the rules of practice of the English Courts had been adopted in ours, the judgment supposed to be entered in this case, will be found not to be warranted, either by the common law, or by the rules of practice of the English Courts. In England, no suits can be instituted, ox *43 judgments rendered, unless an original writ has been issued, not only for giving cognizance of the cause to the Courts, but also for the purpose of obtaining the tax, which, as well in that country as in this, has been imposed on law process. And to show that writs should issue on judgments by confession, and that the tax should be paid on them, I will refer to the rules of the Courts of King’s Bench, one of Hilary term, 19th, James 1st, and the other of Michaelmas term, 30th, Charles 2nd, which latter makes mention of the practice which had lately prevailed, of entering up judgments on confession, without having issued out the necessary writs, to the prejudice of the officers of the Court, and in fraud of the revenue. And further, to show that judgments by confession, and the proceedings attendant thereon are carried on in the same manner as adverse suits are, I will refer to Impey’s Practice, where there is a form of a judgment by confession. It recites the writ; the appearance of defendants, by filing a bail piece; the decimation; warrants of attorney, both for plaintiffs and defendants; the cognovit, and the judgment as of, or in term. The judgment in this case is supposed to be entered up in a very different manner. It has few, if any, of the requisites of a judgment by confession, according to the rules of practice in the English Courts; and if we must be governed by these rules in some instances, we ought in all, and not adopt them by piece-meal, as circumstances occur, or parties may wish. In the case in question, no writ has been issued ; no warrant of attorney; no bail; the judgment is not of a term, but in vacation; and if, as is contended, parties may come into Court and have their causes determined without writ, the government will be defrauded of a revenue, which was intended as a fund to pay the salaries of the Judges. This, I believe, ought not to be countenanced, especially as it will contravene a positive law.
Another ground taken by the plaintiffs’ counsel, is, that the Clerks of the Courts are, by the llth section of the judicial law, authorized to enter up judgments by confession in the vacation, which is not admitted by the counsel for the defendants. The words of the section are: “ the Clerks of the several Courts of- record shall have power and authority to sign all judgments confessed by any defendant in his proper person, before them; ” (and after specifying several other acts which he may do,) it proceeds thus: “in as full a manner as any judge of the said Courts might, or could do.” In order to attain a full knowledge of the powers thus given to the Clerk, we ought to ascertain the extent of the authority of a judge. By the common law, a Judge can do no judicial act but in open Court, in term time ; and the whole complex of our judicial laws, give him no other authority. The rendering of a judgment is a judicial act of the highest nature, and must be done in open Court, and not in the vacation; and yet we are called upon to sanction a' proceeding of the Clerk, in the vacation, which has been denominated, and is now insisted upon, to be a judgment. I am at a loss to find from whence the power can be inferred, which gives the Clerk authority to sign a judgment in vacation; the law does not give it, and only merely says, “ that he may sign judgments confessed before him, in as ample a manner as a Judge could; ” and it may not be improper to observe, that at the time this law was passed, the Court of Common Pleas, in each county, was composed of three Judges, so that to give the construction of the act contended for, judgment might be signed in vacation, by four persons — the three Judges and the Clerk. And even in Court, they might, each of them be performing the functions of signing judgments, at one and the same time. The usual, and, indeed, the only proper terms made use of in giving judgments, are: “ therefore, it is considered by the Court, that,” *44 &c. The supposed judgment purports, on the face of it, to he a judgment by the Clerk, or rather by his deputy. But admitting that the Clerk had the power to take the acknowledgment of, and sign a judgment, I am yet to learn how his authority, in a judicial capacity, can be lawfully transferred to be exercised by a deputy. It has been alledged, that as a term in England is said to continue on until another one commences, this judgment taken before the Clerk in vacation, ought to be considered as one of the preceding term. The causes which, in England, induced the necessity of employing fictions to warrant their usurped jurisdictions, do not exist in this country, where the days on which each term shall begin are ascertained by law, and the powers of the several Courts are well defined. Our Courts are, at the end of each term, publicly adjourned to “Court in course, or sine die,” and these adjournments are entered on the record book and signed by the Judge, after which he cannot sit again, or hold a Court, until the day fixed on by law has arrived; so that the fiction above alluded cannot exist among us.
As another means of bolstering up the suppposed judgment, the plaintiffs’ counsel contend that it may be made a judgment of the Circuit Court, either of the term preceding, or that succeeding the entry thereof by the Clerk; and they further contend, that this Court ought to instruct the Circuit Court to enter it up accordingly, and so as to have a relation back to one or the other of these terms, conformably to the practice of the English Court. I have, before endeavored to show, that the practice of these Courts has never been adopted in ours, and I hope that such parts of them as relate to fiction never will be. We have no need of fictions in order to. carry on our judicial proceedings; and a former Legislature has been of the same opinion, which is evinced by their passing a law abolishing the English fictions in proceedings in ejectment. Should the fiction -be resorted to in this country, of entering up judgments so as to have relation to a past term, what will, what must he the consequence, in many, if not in this instance ? Liens will be created on real estates, which no one could contemplate or guard against; innocent purchasers will be defrauded, and creditors, by intermediate judgments, will not only lose their lien, but often their honest debts, as we have no law which requires the docketing of judgment by their real, not fictitious dates. Judgments by vacation have never been thought of in this country; they are unknown, and will have a retrospective, and, consequently, an unconstitutional effect. By the judiciary act, sec. 23, the Superior Courts are authorized to adopt rules of practice, which' were to be observed by the Inferior Courts, as far as practicable. Among the rules established by this Court, there is one, bearing date in 1805, forbidding the entry of judgment by warrant of attorney in any other manner than by motion, in term time, in open Court; the plaintiffs contend that this rule is virtually repealed by the law of 1807, above recited. As I cannot subscribe to this construction, I will endeavor to compare them in such a manner, as that each may have an operative effect. The law authorizes the Clerk to sign judgment on confessions taken before him, in as full a manner as any Judge might, or could do; .but as a Judge has no power to sign a judgment in vacation, and as, consequently, the authority of the Clerk is the same as the Judge’s, we must, in order to give effect to the statute, look upon the power given to the Clerk, to be no more than that of signing judgments in open Court, as fully as the Judge might, or could do; and as we know that all judgments of the Court are recorded in the docket book, and signed by the Judge, at the end of each term, it follows, that the rule of Court, which forbids the entering up of judgment on war *45 rants of attorney, otherwise than by motion in open Court, will aptly apply, and then the judgments signed by each, will be docketed and entered as a record of the Court. There is a case nearly similar in all its circumstances to the present one, in Pennington’s Reports, and decided in the Supreme Court of New Jersey. A judgment was confessed in vacation, and signed by one of the Judges of the Court of Common Pleas. The question was, whether this judgment, so signed in vacation, was valid by the laws of that State, which (as our rule is,) require that all judgments by warrant of attorney, should be confesseed in open Court. The Supreme Court declared the judgment recorded in the Court of Common Pleas to be void, and no judgment, because it was not taken in conformity to law; and if this decision was correct, the judgment now in question, must, by our rule of Court, be also void.
I will now examine such of the several sections of this judiciary act, as seem to have a bearing on the question, and endeavor, fiom them, to prove, that this judgment is not in conformity to them. By the 18th section, the declaration must be filed with the Clerk, on which is to be endorsed the original writ, or summons, in each action, which is to be served fifteen days before the term to which it is returnable. By the 59th section, no judgments are to be a lien on real estates more than five years, unless revived by scire facias, and by the 61st section, the form of a writ of execution is given. It does specially provide, that writs must be issued and served in all suits; but there was none here. A judgment must be revived by writ of scire facias, arrd served, and the writ of execution must recite, that the plaintiff hath recovered his judgment before the Judges of the Court, not of the Clerk ; and yet, in contradiction to the very terms of the act, the execution which has issued on this supposed judgment, as appears by the records returned and certified to this Court, states, that the plaintiffs in vacation, in the Clerk’s office of the Circuit Court, before the Clerk thereof, recovered against the defendants, their debt and damages, (mentioning the amount,) an undeniable proof that the plaintiffs considered their judgment as one af the Clerk’s, and not of the Judge’s; and this writ is tested the fourth day of January, 1820, ten months after the date of the supposed judgment, and after the intervention of two terms of the Circuit Court.
Not having been in the practice of the law for some time, I have been enabled to examine this question, exempt from any bias occasioned either by prejudice or pride, or former opinions advanced to others. I have considered it in every point of view that I am capable of, and have come to the conclusion, that the supposed judgment is absolutely void as such; and that, therefore, the rule ought to be discharged.